# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY § § § v. § § CLEAN N GO, LLC, SEUNG SONG, § ELIZABETH ALVAREZ, INDIVIDUALLY § AND AS NEXT FRIEND OF HECTOR § AMAYA, AND HECTOR AMAYA § § | Civil Action No. 4:17-CV-00116 Judge Mazzant |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Allied Property and Casualty Insurance Company's Motion for Summary Judgment (Dkt. #22). After considering the motion, the responses, and the relevant pleadings, the Court finds that Plaintiff's motion is denied.

### BACKGROUND

Defendant Clean N Go, LLC ("Clean N Go") is the named insured under a policy of insurance issued by Plaintiff Allied Property and Casualty Insurance Company ("Allied"), which is titled "Texas Business Owners Policy," and is numbered ACP BPAC7225400538 (the "Policy"). The Policy has a policy period of November 7, 2013, to November 7, 2014.

On June 16, 2014, Hector Amaya ("Amaya") was working for Clean N Go, drying vehicles at an automated car wash. Amaya claims that as he was drying a customer's vehicle that was parked in front of the automated car wash, another vehicle that was exiting the car wash pinned Amaya between the two vehicles. On February 11, 2016, a lawsuit was filed against Clean N Go in Denton County, Texas, District Court, styled *Alvarez, et al. v. Spencer, et al.*, No. 16-01118-431, which asserted claims of negligence and gross negligence against Clean N Go (the Amaya litigation" or "underlying litigation"). Amaya and Elizabeth Alvarez ("Alvarez"), as next friend of

Amaya, assert that Amaya suffered injuries due to Clean N Go's failure to provide and maintain a place of employment that is reasonably safe.

Allied commenced this action on February 16, 2017, seeking a declaration that it has no duty to defend Clean N Go (Dkt. #1). On August 7, 2017, Allied filed the instant Motion for Summary Judgment (Dkt. #22). On August 21, 2017, Defendant Clean N Go filed its response (Dkt. #24). Defendants Amaya and Alvarez joined in on the response (Dkt. #25). On August 30, 2017, Allied filed its reply (Dkt. #28). On September 6, 2017, Defendants filed their sur-reply (Dkt. #30).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential

elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Allied asserts it is entitled to summary judgment because the claims in the underlying litigation are not covered under the Policy because the policy includes an "Employer's Liability" exclusion that disclaims coverage for bodily injury to an employee acting in the course and scope of his employment for the insured. Defendants argue that the Policy expressly does not exclude all employees, specifically "temporary workers." Defendants contend that looking at the face of the state court petition (the "Petition"), it is unclear whether Amaya was an "employee" or "temporary worker" and Allied had to conclusively show that Amaya was not a "temporary worker" on the face of the Petition.

The Court must "apply Texas law as interpreted by Texas state courts." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011) (quoting *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). Under Texas law, "insurance policies are construed according to common principles governing the construction of contracts, and the

3

interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). The Court must interpret the policy to discern the intention of the parties as it is expressed in the policy. *Id*. "Whether a contract is ambiguous is [also] a question of law." *Id*. (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)). An ambiguity is not present simply because the parties advance conflicting interpretations, but exists "only if the contractual language is susceptible to two or more reasonable interpretations." *Id*. (quoting *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). "Effectuating the parties' expressed intent is [the Court's] primary concern." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co*., 267 S.W.3d 20, 23 (Tex. 2008). "No one phrase, sentence, or section [of the policy] should be isolated from its setting and considered apart from the other provisions." *Id*. (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). A policy's terms should be given their plain meaning, without inserting additional provisions in the contract. *Id*.

"Under Texas law, an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify." *Gilbane*, 664 F.3d at 594 (citing *D.R. Horton – Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). The duties to defend and indemnify are distinct, and one may exist without the other. *Id*.; *see also Colony Ins. Co. v. Peachtree Const., Ltd*., 647 F.3d 248, 253–54 (5th Cir. 2011). An insurer's duty to defend is determined by the application of the "eight-corners rule." *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). "The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant." *Id*. (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). "[T]he duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer

4

is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy." *Colony*, 647 F.3d at 253 (citing *GuideOne*, 197 S.W.3d at 308). All doubts regarding the duty to defend are resolved in favor of the duty, and the pleadings are construed liberally. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). If a complaint potentially includes a covered claim, the insurer must defend the entire suit. *Id.* (citation omitted).

In determining whether an insurer has a duty to defend, the policyholder "bears the initial burden of showing that the claim [in the underlying action] is potentially within the insurance policy's scope of coverage." *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (citation omitted). "However, it is the insurer that carries the burden of establishing that 'the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule." *Regency Title Company, LLC v. Westchester Fire Ins.*, No. 4:11-cv-390, 2013 WL 6054820, at *4 (E.D. Tex. Nov. 15, 2013) (citing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004)). In addition, "[e]xclusions [in the insurance policy] are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008). An exclusion is ambiguous only if it is clearly susceptible to multiple reasonable interpretations. *Regency Title Company*, 2013 WL 6054820, at *4 (citing *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923 (N.D. Tex. 2009)). "[The] rules favoring the insured . . . are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable interpretation, the [the rules favoring the insured] do not apply." *Id.* (quoting *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998)). "Courts should not strain to find an ambiguity, if, in doing so, they defeat the

probable intentions of the parties, even though the insured may suffer an apparent harsh result as a consequence." *Ohio Cas. Group of Ins. Companies v. Chavez*, 942 S.W.2d 654, 658 (Tex. App.—Houston [14th Dist.] 1997, writ denied). "Furthermore, if a policy provision is susceptible to only one reasonable interpretation, the court is obligated to give the words their 'plain meaning' even if this means coverage is denied." *Regency Title Co.*, 2013 WL 6054820, at *4 (citing *Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 744-45 (5th Cir. 2011)).

*Four Corners of the Policy*

Turning to the employee exclusion, the Court looks at the language of the exclusion, which states as follows:

Section I. Coverages

A. Coverage A – Bodily Injury and Property Damage Liability

1. Insuring Agreement

a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

2. Exclusions
This insurance, including any duty we have to defend "suits", does not apply to:
. . .

e. Employer's Liability

"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
    (a) Employment by the insured; or
    (b) Performing duties related to the conduct of the insured's business; or
(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and

6

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Dkt. #22, Exhibit B at p. 66–67).

The term "Employee" is defined to include a "leased worker" but does not include a "temporary worker" (Dkt. #22, Exhibit B at p. 82). The term "leased worker" is defined as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker'" (Dkt. #22, Exhibit B at p. 83). The term "temporary worker" is defined as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (Dkt. #22, Exhibit B at p. 85).

Having reviewed the four corners of the policy, the Court now turns to the facts alleged in the four corners of the underlying Petition.

*Four Corners of the Petition*

"Texas law requires [the Court] to consider the allegations in the complaint along with any reasonable inferences that flow from the facts alleged." *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 601 (5th Cir. 2006) (citing *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex. 2005)). "Courts may not . . . (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) (citing *Guar. Nat'l Ins. Co. v. Azrock Indus.*, 211 F.3d 239, 243 (5th Cir. 2000)). Any doubts regarding coverage are to be resolved in the insured's favor:

> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a

7

> liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.

*Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *see also King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) ("[W]e resolve all doubts regarding the duty to defend in favor of the duty.").

The language in the Policy requires that in order for a claim for the underlying lawsuit to be covered under the Policy, Amaya must have been a "temporary worker" and not an "employee" as defined by the Policy. The underlying Petition states:

> On or about June 16, 2014, Plaintiff Amaya, a minor at the time, was working at the Clean N Go Car Wash. In the course and scope of his employment, the Plaintiff was drying a customer's vehicle directly in front of the company's automated car wash, as instructed by his supervisor. . . . [A customer's vehicle exited] the automated car wash and continued traveling forward, pinning the Plaintiff between two vehicles and causing him serious and permanent injury.

(Dkt. #1, Exhibit A at p. 2–3).

Allied contends that absent any allegation that Amaya qualifies as a "temporary worker," there are no facts in the Petition to impose a duty to defend. However, the cases cited by Allied are distinguishable. The polices in both *Nautilus Ins. Co. v. Home Remedy Servs., LLC*, and *Cincinnati Specialty Underwriters Ins. Co. v. Juan Francisco Chajon*, broadly defined "employee" without limitations. No. H-09-3508, 2011 WL 13130886, at *2 (S.D. Tex. May 31, 2011) and No. 3:16-CV-3180-G, 2017 WL 3233045, at 4–5 (N.D. Tex. July 31, 2017).

In *Home Remedy*, the insurance policy contained an identical employee exclusion but defined "employee" as "any person or persons who provides services directly or indirectly to any insured, regardless of whether the services are performed or where the 'bodily injury' occurs including, but not limited to, . . . a contractor, a subcontractor, an independent contractor, and any person or persons hired by, loaned to, employed by, or contracted by any insured or any insured's

contractor, subcontractor, or independent contractor." 2011 WL 13130886, at *2. The insurer argued that the employee exclusion applied. *Id*. The insured failed to respond to this argument and the court construed the insured's silence as a representation of no opposition. *Id*. Furthermore, because the allegations in the underlying litigation stated that the plaintiff was "working for and/or under the direct control" of the insured, the pleaded facts fell squarely within the broad definition of "employee" of the policy's exclusion. *Id*.

In *Chajon*, the issue was whether the injured workers were "employee[s]" under the policy and, thus, excluded from coverage, or whether they were independent contractors. 2017 WL 3233045 at *3. The state court petitions did not use the term "independent contractor" in reference to either of the injured workers. *Id*. at *5. The policy defined "employee" as "any person who is hired for wage, salary, fee or payment to perform work. Employee includes any leased worker or temporary worker, loaned worker, or volunteer worker." *Id*. at *5, n.4. Although the state court petitions did not explicitly use the term "employee" to describe the injured worker, the petitions alleged that the injured workers were "performing work for [the insured]" at the time of their injuries. *Id*. at *5. The court held those factual allegations brought the injured workers directly within the policy's definition of "employee" and there was no basis for the court to conclude there was a dispute of fact over whether the injured workers were [independent contractors] under the policy."

The policy in this case does not include such a broad definition of "employee." The term "Employee" includes a "leased worker" but does not include a "temporary worker".

In *JNJ Logistics, L.L.C. v. Scottsdale Ins. Co.,* the Western District of Tennessee has addressed an identical employee exclusion provision, which expressly exempted a "temporary worker" from the exclusion. No. 2:10–cv–02741–JPM, 2013 WL 6903937

9

(W.D. Tenn. Dec. 31, 2013). "[T]he Texas and Tennessee eight-corners rules appear to be identical, in that they both require courts to adjudicate the duty to defend based only on the language of the insurance policy and the allegations in the underlying litigation." *Canal Ins. Co. v. XMEX Transp., LLC*, 48 F. Supp. 3d 958, 974 (W.D. Tex. 2014) (citing *JNJ Logistics,* 2013 WL 6903937, at *7)

In *JNJ Logistics*, the relevant policy did not define the term "employee" but stated "'Employee' includes a 'leased worker'. 'Employee' does not include a 'temporary worker.'" *Id*. at *8. The definitions of "leased worker" and "temporary worker" are identical to this case. While the underlying plaintiff, Grove, alleged that he was the "borrowed servant" of the insured, none of the underlying allegations, if taken as true, would definitively establish whether Grove was or was not a "temporary worker" and, thus, a class of "employee" still covered by the policy. *Id.* at *8–10. According to the district court, applying the same "eight-corners" rule that applies in Texas:

> Although the Amended Third–Party Complaint arguably states Grove was JNJ Logistics's employee via the "borrowed servant" doctrine, there are not sufficient facts to indicate that Grove was not a "temporary worker," and therefore excluded from the Employer's Liability Exclusion in the insurance policy. As a result, it is not definitively clear from the face of the Amended Third–Party Complaint whether Grove is covered. Therefore, the Policy arguably covered those claims. [citations omitted]. Having found the Amended Third–Party Complaint arguably stated a claim that was covered by the Policy, Scottsdale's duty to defend was triggered. [citation omitted].

*Id.* at *11.

The allegations in the present Petition only indicate to the Court that Amaya was acting within the scope of his employment when the incident occurred and it is unclear from the Petition whether or not Amaya was a temporary employee. The Petition does not use the term "temporary employee" in reference to Amaya. Instead, the Petition states that Clean N Go was negligent in

failing to maintain a safe place of employment for "its employees." The Petition does not contain factual allegations to conclusively establish that Amaya was not a temporary employee.

From the facts eligible for consideration under the "eight-corners" rule, and despite the allegation that Amaya was working for Clean N Go in the course and scope of his employment, it would not be unreasonable for the Court to assume that Amaya was a "temporary employee" and not an employee as defined by the Policy. Taking the facts as pleaded in the Petition, the Court finds Allied owes a defense to Clean N Go.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Allied Property and Casualty Insurance Company's Motion for Summary Judgment (Dkt. #22) is hereby **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 20th day of November, 2017.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE